In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1107

ALEXANDER TORREZ, also known as ALEJANDRO TORREZ,

*Plaintiff-Appellant*,

*v.*

TGI FRIDAY'S, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 45—**Blanche M. Manning**, *Judge*.

———————

ARGUED NOVEMBER 2, 2007—DECIDED DECEMBER 3, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and RIPPLE, *Circuit Judges*.

POSNER, *Circuit Judge*.  In this suit for personal injury, governed by Illinois law, the district judge granted summary judgment in favor of the defendant, and the plaintiff appeals. Federal jurisdiction is based on diversity of citizenship, though we were able to ascertain this only by directing the parties to file supplemental jurisdictional memoranda; for the jurisdictional statement in the plaintiff's opening brief failed to identify the state in which the defendant, a corporation, is incorporated, and

the jurisdictional statement in the defendant's brief stated that the plaintiff's jurisdictional statement was complete and correct, though it was neither.

The plaintiff was injured while cleaning the hood over a fryer exhaust fan at the defendant's restaurant in Batavia, Illinois. He was employed not by the defendant, TGI Friday's (had he been, he could not have brought this suit but would have been remitted to an administrative proceeding under the state's workers' compensation law), but by a cleaning service, Facilitec, hired by the defendant. He was working at night because he had to wait to enter the restaurant until its employees had finished taking inventory and were about to close the restaurant for the night. Inside the fryer hood were five light bulbs, each encased in a transparent glass globe. The bulbs and their globes were not visible unless one looked under the hood, which the plaintiff did not do. Instead he reached inside to clean the inside of the hood—and felt a sudden pinch in his arm. The pinch turned out to be a serious wound, severing several tendons and disabling the plaintiff from regular employment. He had cut his arm on one of the globes, but the record is silent on whether it was a cracked globe that broke apart when his arm touched it or a globe that was broken before he reached into the hood.

The record contains no picture of the fryer or even identification of the brand or model. The plaintiff's lawyer told us that he could not gain access to the restaurant to look at the fryer and hood, which is absurd; hasn't he heard of pretrial discovery? (See Fed. R. Civ. P. 34(a)(2).) Well, maybe not, because he conducted no discovery at all. As a result, nothing is known about the source of the crack in the globe, or, if the globe was already broken when the plaintiff's arm touched it, the cause of its being

broken. The globe could have been defectively designed by the manufacturer, defectively installed or manhandled by the manufacturer of the fryer hood, damaged in shipment, damaged by an employee of the restaurant, damaged by another employee of the plaintiff's company or by the plaintiff himself on a prior visit to clean the hood. We shall never know.

The plaintiff has litigated the case as if it were a slip and fall case, where for example a customer accidentally knocks a bottle containing liquid off a shelf in the defendant's store, another customer slips on it and injures himself, and the suit charges that the store should have detected and removed the danger before the accident. E.g., *Perminas v. Montgomery Ward & Co.*, 328 N.E.2d 290, 291-92 (Ill. 1975); *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 437-41 (Ill. 1958); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). At the same time and inconsistently he argues that the globe was cracked or broken by the restaurant's employees. These are two quite different theories, requiring different proof. If an employee of the defendant creates a hidden danger (maybe, as claimed in *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358 (7th Cir. 1998), a store's employee rather than another customer knocked the bottle off the shelf and failed to notice the spillage or report it or clean it up), such as a cracked or broken glass globe in a place into which the employee should know someone will be likely to reach his arm without awareness of the danger, the employee is negligent and his negligence is imputed to his employer. *Donoho v. O'Connell's, Inc.*, *supra*, 148 N.E.2d at 437. But there is as we said no evidence of who broke or cracked the globe, and specifically no evidence that one of the restaurant's employees did it.

If the danger was created by someone other than an employee of the restaurant, the restaurant is liable only if it would have detected and removed the danger had it been exercising due care to make its premises safe for its employees and for any business invitees (which would include the members of the outside cleaning staff as well as any customer or inspector invited into the kitchen) who were within the zone of danger. In the case of slip and fall accidents in stores, due care requires the store-owner to keep the floor reasonably safe for customers by cleaning it frequently and by directing its employees to do a certain amount of patrolling of the aisles with their eyes directed at the floor. As we explained in the *Peterson* case, "The store's duty is not merely to prevent careless spillage by its employees but also to be on the lookout for spillage by whomever caused and to clean it up promptly. Satisfaction of the latter half of this duty, the duty of inspection and clean up, does not require continuous patrolling of the aisles; the cost would be disproportionate to the benefit. But it may require, in self-service stores where customer traffic is heavy and the probability of a slip and fall therefore high (both because there are many people using the aisles, who are customers rather than employees, and because the probability that a customer through spillage or otherwise will create a hazardous condition is a function of the number of customers per square foot of floor), frequent and careful patrolling. The cost of such patrolling to the store need not be high. Employees have frequent occasion to be in the store's aisles in any event; they have only to be alert to the possi-bility of spillage to notice it and clean it up promptly." 241 F.3d at 604-05 (citations omitted). Of critical importance is whether "the substance [that caused the accident] was there a length of time so that in the exercise of ordinary

care its presence should have been discovered." *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 667 (Ill. App. 2000); see also *Martin v. Wal-Mart Stores, Inc.*, 183 F.3d 770, 774-75 (8th Cir. 1999); *Porche v. Winn-Dixie Louisiana, Inc.*, 644 So. 2d 699, 702 (La. App. 1994); compare *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 679-80 (Ill. App. 1980). If there is a comparable duty on the part of restaurateurs to inspect fryer hoods for cracked or broken glass globes, this is not so obvious as to enable a suit to go forward on the basis of res ipsa loquitur—that the accident must have been due to the defendant's negligent management of something within its control.

Determining whether a defendant has failed to use due care to prevent an accident requires a comparison between the cost of the precaution that would have prevented it and the cost of the accident that occurred as a result of the absence of the precaution, discounted by the probability of an accident if the precaution was not taken. If an accident if it occurs would cause on average a $10,000 loss, and the probability that the accident would occur unless a particular precaution was taken was 1 percent, and the precaution would have cost only $50, then the failure to take it was indeed negligence. For an expected loss of $100 (1 percent of $10,000) could have been prevented at a cost of only $50. Rarely in an actual negligence case are the factors that determine whether a precaution is cost justified actually quantified. But if the case is properly litigated there will at least be evidence of a general nature about whether the probability of an accident was high or low, the loss if the accident occurred would be great or small, and the measures that would have prevented the accident would have cost a lot or a little, and such general information will usually suffice to

resolve the issue of negligence satisfactorily. But the record of this case contains absolutely no evidence concerning these magnitudes. How likely is a globe in a fryer hood to be cracked or broken? How easily could such a defect be determined by inspection (for the globes, being placed behind a lip in the hood, resist easy inspection)? How frequent and, on average, how serious is the type of accident that befell the plaintiff? Was he perhaps in the best position to inspect, since it was his duty to clean the bulbs? Indeed, was it reckless for him to try to clean a surface from which (as he must have known, as there is no suggestion that this was the first time he had tried to clean the fryer hood) hollow glass globes protruded that he could not see? In the absence of some evidence on these points—there is none—no reasonable jury could find that the plaintiff's injury was due to negligence on the part of employees of the restaurant. Summary judgment was therefore rightly granted in favor of the defendant.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*