# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-3916

LENORA REID,

*Plaintiff-Appellant,*

*v.*

KOHL'S DEPARTMENT STORES, INCORPORATED,
a Delaware Corporation licensed to do business
in Illinois,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 472—**James B. Zagel**, *Judge.*

ARGUED JUNE 4, 2008—DECIDED SEPTEMBER 16, 2008

Before BAUER, WOOD and WILLIAMS, *Circuit Judges*.

BAUER, *Circuit Judge*. Lenora Reid slipped and fell on the floor of a retail store owned and operated by Kohl's Departments Stores, Inc. She subsequently brought this action against Kohl's. The district court granted summary judgment in favor of Kohl's, and Reid appealed. For the reasons set forth below, we affirm.

On December 7, 2003, Reid and her friend Anthony Adkins visited Kohl's to shop for men's dress shirts. After perusing items in the men's section of the store, Reid lost interest and decided to walk over to the women's pajamas section; the men's section was carpeted and separated from the other section by a tile floor. As Reid stepped off of the carpet into the aisle, she slipped and fell, sustaining mild injuries. She saw near the spot of her fall a pink milkshake spilled from a large cup in a pool on the tile floor. Adkins described the scene: "the floor was wet with something that looked like a strawberry milk shake, like ice cream and a big puddle on the floor with a cup and a straw, and it was open."

The manager on duty at the store, Kelly Rizzo, arrived at the scene to assist Reid. She too saw the "pink smoothie, milkshaky ice cream type of thing," as well as a cup, a lid, and a straw on the floor near Reid when she arrived. However, Rizzo did not see the spilled milkshake on the floor during an inspection of the aisle area shortly before the fall. According to Rizzo, Kohl's had a routine procedure for inspecting the premises at the Kohl's store. That practice involved a continuous walk-through by the manager on duty to ensure that the store was clean and safe. Rizzo testified that she had followed this procedure on December 7, 2003. During her walk-through, she passed the aisle where Reid had fallen at the most ten minutes prior to the fall and had not seen the spilled milkshake. She further testified that no employees or customers reported the spill prior to Reid's accident. Reid filed a complaint against Kohl's in an Illinois court on November 1, 2005, and Kohl's removed the case to

federal court on January 6, 2006. The district court granted Kohl's motion for summary judgment on September 19, 2007, finding that Kohl's had no actual or constructive notice of the spill prior to Reid's fall and that the spilled milkshake was an open and obvious condition that Kohl's owed no legal duty to protect against. This timely appeal followed.

We review a district court's grant of summary judgment *de novo*. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Darst*, 512 F.3d at 907.

Illinois law governs the extent of Kohl's liability in this diversity action.[1] In Illinois, businesses owe their invitees

---

[1] A brief note on jurisdiction: there is no question that the parties are diverse—Reid is an Illinois citizen and Kohl's is a Delaware corporation with its principal place of business in Wisconsin. As far as the jurisdictional amount, there is little in the record (but ultimately enough) that establishes that the amount in controversy exceeds $75,000. In her complaint, Reid claimed that she suffered "severe and debilitating injuries" that required "a large sum of money for medical, hospital and doctor care and attention." She did not attach an ad damnum clause. In her deposition, Reid discussed her injuries to her back and side, as well as the physical therapy to address these injuries,

(continued...)

a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Marshall v. Burger King Corp.,* 222 Ill.2d 422, 305 Ill.Dec. 897, 856 N.E.2d 1048, 1057-58 (2006); *Thompson v. Economy Super Marts, Inc.*, 221 Ill.App.3d 263, 163 Ill.Dec. 731, 581 N.E.2d 885, 888 (1991); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001) (applying Illinois law); *Restatement (Second) of Torts* §§ 343, 344 (1965). Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that the business had actual or constructive notice of the dangerous condition that caused the fall. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill.App.3d 1060, 257 Ill.Dec. 381, 753 N.E.2d 1007, 1010 (2001); *Tomczak v. Planetsphere, Inc.*, 315 Ill.App.3d 1033, 249 Ill.Dec. 58, 735 N.E.2d 662, 666 (2000).

Reid argues that she presented evidence from which a trier of fact could determine that Kohl's had constructive knowledge of the spill. Where constructive knowledge is alleged, "[o]f critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence

---

[1] (...continued)

but did not state the specific amount of her damages. Prior to removing the case to federal court, Kohl's served Reid with a request to admit that she sought damages in excess of $75,000. Reid admitted that she did. In its notice of removal, Kohl's stated its good faith belief that the amount in controversy exceeded the jurisdictional amount. Based on this (albeit scant) record, we are satisfied that the jurisdictional amount has been met, and we may proceed to the merits *vel non*.

should have been discovered." *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007) (quoting *Tomczak*, 315 Ill.App.3d 1033, 735 N.E.2d at 667) (internal quotations and alterations omitted); *Thompson*,221 Ill.App.3d 263, 581 N.E.2d at 888 (noting that in establishing constructive notice, the time element is the material factor). Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice. *Tomczak*, 315 Ill.App.3d 1033, 249 Ill.Dec. 58, 735 N.E.2d at 668; *Hayes v. Bailey*, 80 Ill.App.3d 1027, 36 Ill.Dec. 124, 400 N.E.2d 544, 546-47 (1980).

In this case, Reid fails to meet her burden of showing Kohl's constructive notice—that is, that the foreign substance had been on the floor for such a length of time that Kohl's should have discovered it. Reid presented photographs of the partially melted milkshake taken shortly after the accident which suggest, according to Reid, that it had been on the floor for an extended period of time. Reid testified that though she could not tell exactly how long the milkshake was on the floor prior to her fall, "[i]t appeared to me that it may have been down there for some time because it was starting to get liquid in some areas of the spillage. It was liquid and running a little bit." She further described the consistency of the substance on the ground by noting that "some of it was thick and the other part was more liquid." Adkins also opined on how long the milkshake had been melting on the floor, though he reached a different conclusion after viewing the scene. He testified that it looked as if the spill had "just happened [because] it seemed to be ice cream, and it hadn't melted yet."

Neither the testimony of Reid and Adkins nor the photographs of the spillage indicate with any degree of certainty how long the milkshake had been on the floor. Though Reid argues that a fact-finder could infer from the texture of the melted beverage that it had been on the floor for an extended period of time, this inference is far too speculative to warrant much consideration. We know little about the substance that caused Reid to slip other than its color. Reid presented no evidence regarding its origin or its composition—perhaps its original owner ordered it extra thin or thick; perhaps the milkshake came from a vendor known for particularly heavy or light milkshakes; perhaps the milkshake was not a milkshake at all, but rather frozen yogurt or a fruit smoothie. The record is devoid of any facts which would have given insight into the relevant time frame. Reid also failed to establish that the milkshake melted on the floor specifically, and not in the cup, before its owner unwittingly (or deliberately) tossed it on the floor. Reid might have been aided by expert testimony, perhaps on the dynamics of melting objects or the viscosity of milk-based frozen beverages. Without any of this, Reid's cursory conclusion that the milkshake must have been on the ground "for some time" falls flat.

So the only affirmative statement regarding the length of time came from Rizzo, who stated that the milkshake was in the aisle for at most ten minutes prior to the fall. Because Reid failed to prove otherwise, we, as did the district court, treat that ten minutes as the outside limit of time. *See Peterson*, 241 F.3d at 604.

Under the circumstances of this case, no reasonable person could conclude that ten minutes was enough time to give Kohl's constructive notice of the spilled substance. Illinois law recognizes that there is no bright-line rule indicating the requisite time to establish notice, though periods in excess of ten minutes have failed the test. *See, e.g.*, *Hayes*, 80 Ill.App.3d 1027, 400 N.E.2d at 546-47. Rather we look to the circumstances of the particular case to determine if the length of time gave rise to notice. *Peterson*, 241 F.3d at 605. Here, Rizzo testified that on the afternoon of the accident, very few customers were in the store, which lessened the likelihood of the hazardous condition. *See Hresil v. Sears, Roebuck & Co.*, 82 Ill.App.3d 1000, 38 Ill.Dec. 447, 403 N.E.2d 678, 680 (1980). Were customer traffic heavy, the onus would have been on Kohl's to provide frequent and careful patrolling. *Peterson*, 241 F.3d at 604-05. The store was almost empty, so the duty to inspect the premises accordingly decreased. In addition, the Kohl's store's internal procedure for monitoring for spills and other dangerous conditions appropriately addressed the threat of such issues. *Hresil*, 403 N.E.2d at 680; *see also Peterson*, 241 F.3d at 604-05. Considering these conditions as a whole, ten minutes was not enough to give Kohl's constructive notice of the spill.

Reid argues that the district court misapplied *Peterson* and held, contrary to Illinois law, that ten minutes was *de facto* not enough time to establish constructive notice. To the contrary, the district court properly addressed *Peterson* and Illinois law by examining the specific circumstances of the case and conditions of the

store at the time of the fall. It acknowledged the absence of a bright-line rule on the appropriate length of time to establish constructive notice, distinguished the facts of *Peterson*, and likened Reid's case to that in *Hresil*. Nothing in the district court's analysis of the constructive notice issue ran afoul of Illinois law.

By failing to meet her burden in establishing constructive notice, Reid's claim must fail.[2] The district court's grant of summary judgment is AFFIRMED.

---

[2] Because we find that Kohl's had no notice of the spilled substance, we need not address the district court's other holding that the condition was open and obvious.

---