In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3276

KRISTEN ZUPPARDI, an individual,

*Plaintiff-Appellant*,

*v.*

WAL-MART STORES, INC.

*Defendant-Appellee*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 12 C 2183 — Michael P. McCuskey, *Judge*.

ARGUED FEBRUARY 24, 2014 — DECIDED OCTOBER 24, 2014

Before FLAUM and ROVNER, *Circuit Judges*, and KENDALL, *District Judge*.[*]

KENDALL, *District Judge*. Kristen Zuppardi slipped and fell on the floor of a retail store owned and operated by Wal-Mart Stores, Inc. She subsequently brought this action against Wal-Mart. The district court granted summary judgment in favor of Wal-Mart and Zuppardi appealed. Zuppardi presents three arguments on appeal. She maintains that the district court

[*] Of the Northern District of Illinois, sitting by designation.

abused its discretion in denying her motion to strike Wal-Mart's reply for submitting a declaration in bad faith and violating a Central District of Illinois local rule. But the declaration was not a bad faith filing and the district court was well within its discretion in determining that the local rule did not prevent Wal-Mart from replying in the manner it did. Zuppardi further contends that the district court erred by deeming certain of Wal-Mart's facts admitted due to Zuppardi's violation of the same local rule. We find the district court again acted within its discretion in enforcing the rule. She finally argues that the district court erred in awarding summary judgment to Wal-Mart. For the reasons set forth below, we affirm.

## I. Background

Around 4 P.M. on June 15, 2010, Zuppardi, her brother, and her son visited the Wal-Mart in Champaign, Illinois. Upon entering, Zuppardi took a shopping cart from the front of the store and proceeded down an action alley, a highly trafficked main aisle of the store, toward the back of the store to buy milk. She was walking at a normal speed and did not see any other customers or Wal-Mart employees as she traveled down the aisle. As Zuppardi was walking, she slipped and fell in a puddle of water on the concrete floor of the store. She thought the puddle was composed of water because it was clear and odorless. Zuppardi testified that the puddle was two feet in diameter and that "it was really blended in with the floor." She did not see the puddle before falling and does not know how the water accumulated. There were no warning signs or caution cones around the puddle. Nor were there any track marks, footprints, or trails leading to or from the puddle.

Zuppardi's fall occurred near a set of doors in the back of the store frequently used by employees because they lead to the store's overstock merchandise, time clock, break room, and management offices. The fall did not take place near any store displays.

There were no other customers or Wal-Mart employees in the immediate area when Zuppardi fell. As a result, Zuppardi had to look for an employee to assist her in the aftermath. She found an employee stocking shelves in the grocery section of the store. It is unclear what products were being stocked, but Zuppardi mentioned it may have been cookies, hot dogs, pop (soda products), or water. Water bottles were located six aisles away from the location of the fall while cookies, hot dogs, and soda products were placed in different aisles; however, Wal-Mart employees used the action alley regularly in order to restock items found throughout the grocery section.

An assistant manager of the store at the time, George Steward, did not witness the fall but stated that because it occurred in close proximity to the frequently-used back doors, Wal-Mart personnel would have promptly dealt with the puddle even if Zuppardi had not fallen. According to Steward, Wal-Mart employees were required to follow Wal-Mart's policies and procedures, including the conducting of regular safety sweeps of the store that focus on high traffic areas, such as any action alleys. The employees were tasked with monitoring the action alleys and scanning for unsafe conditions while performing their other job duties. Upon encountering a spill, employees were required to stay with it until removed. All employees carried a "towel in pocket" to clean up any discovered spill, something Wal-Mart called the "clean-as-you-go"

method. Steward further testified that although he had no personal recollection of any investigation conducted regarding Zuppardi's fall, including any incident file that may have been created, it was Wal-Mart policy to pursue such a course of action and he had no reason to doubt that the protocol was followed. However, Wal-Mart was unable to locate Zuppardi's customer incident file and was accordingly incapable of producing any documents related to the investigation other than five photographs taken the day of the incident depicting the location of the fall and a copy of the claim report submitted to CMI, Wal-Mart's casualty claims administrator. Further, no video footage was available because Wal-Mart did not have any of its surveillance cameras focused on the pertinent area on June 15, 2010.

Zuppardi filed a complaint against Wal-Mart in an Illinois court on June 8, 2012, and Wal-Mart removed the case to federal court on July 19, 2012. The district court granted Wal-Mart's motion for summary judgment on September 17, 2013, finding that Wal-Mart had not caused the puddle and did not have actual or constructive notice of the puddle prior to Zuppardi's fall. This timely appeal followed.

## II. Discussion

**A. The District Court did not Abuse Its Discretion in Denying the Motion to Strike or Deeming Certain Facts Admitted**

Zuppardi first argues that the district court erred in denying her motion to strike Wal-Mart's reply. Zuppardi maintains two grounds for striking the reply: that Wal-Mart (1) acted in bad faith by making contradictory assertions in its

factual allegations and (2) violated Central District of Illinois Local Rule 7.1 by providing explanation in response to undisputed material facts. A district court's grant or denial of a motion to strike is reviewed for an abuse of discretion. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 805 (7th Cir. 2014); *Bernstein v. Bankert*, 733 F.3d 190, 216 (7th Cir. 2013).

The district court did not abuse its discretion in denying Zuppardi's motion to strike under either rationale. Zuppardi's contention that Wal-Mart's reply brief contained factual allegations contradictory to those found in the motion for summary judgment is inaccurate. Zuppardi sought to strike Wal-Mart's reply brief pursuant to Federal Rule of Civil Procedure 56(h) by pointing to three instances of allegedly contradictory factual statements; however, none of the statements were inconsistent to those found in the original motion. The district court considered each statement and correctly concluded that while the statements found in the reply added clarity to those found in the original motion for summary judgment, they did not oppose or contradict any prior statement. Accordingly, this argument provides no basis for a finding of an abuse of discretion.

Nor did the district court abuse its discretion when it determined that Wal-Mart had not violated Central District of Illinois Local Rule 7.1 by providing brief explanations where Wal-Mart believed that an undisputed material fact was unclear or incomplete. The Central District of Illinois requires a summary judgment movant's reply to additional facts to succinctly state whether each fact is (1) conceded to be material and undisputed; (2) conceded to be material but disputed; (3) immaterial but disputed; or (4) immaterial and undisputed.

C.D. Ill. R. 7.1(D)(3)(a)(1–4). Rule 7.1 further states that a failure
to respond to any numbered fact will be deemed an admission
of that fact. C.D. Ill. R. 7.1(D)(3)(a)(5). Zuppardi argues that
Wal-Mart's reply brief was deficient because it occasionally
conceded an additional fact was undisputed while clarifying
that fact with an additional statement and a citation to the
record. But Rule 7.1 contains no language prohibiting the
clarification of additional facts in a reply. The district court
came to the conclusion that Wal-Mart did not violate Rule 7.1
when it provided a brief explanation regarding an undisputed
fact, and a district court's interpretation of its own rules is due
considerable deference. *See Bunn v. Khoury Enters.*, 753 F.3d
676, 681 (7th Cir. 2014); *Elustra v. Mineo*, 595 F.3d 699, 710 (7th
Cir. 2010). We will intrude on that discretion only where we
are "convinced" the district court made a mistake. *Bunn*, 753
F.3d at 681. We cannot say we are "convinced" the district
court erred in this case when there is nothing at all in the rules
to suggest that it did. The district court made a discretionary
call concerning a matter not explicitly covered by the local or
federal rules, and it was perfectly entitled to do so.

Zuppardi also contends that the district court abused its
discretion when it deemed admitted certain facts listed in Wal-
Mart's motion for summary judgment. Zuppardi, however, has
waived the argument because she failed to identify which facts
were improperly deemed admitted or how the alleged error by
the district court affected its decision. *See Guzman v. City of
Chicago*, 689 F.3d 740, 744 n. 3 (7th Cir. 2012) (quoting *Spath v.
Hayes Wheels Int'l-Ind. Inc.*, 211 F.3d 392, 397 (7th Cir. 2000))
("Perfunctory and undeveloped arguments are waived,
especially when, as here, a party fails to develop the factual

basis of a claim on appeal and, instead, merely draws and relies upon bare conclusion." (citation and internal quotation marks omitted)). Waiver aside, we see no error in the district court's handling of Zuppardi's response to Wal-Mart's statement of facts. The same local rule discussed above allowed the district court to deem certain of Wal-Mart's facts admitted, and the district court acted within its discretion in enforcing the rule. Rule 7.1 requires the party responding to a summary judgment motion to submit a list, by number, of each fact with a designation that the fact is either disputed or undisputed. *See* C.D. Ill. R. 7.1(D)(b). Zuppardi did not comply with the rule; instead she listed her own undisputed material facts, disputed material facts, and undisputed immaterial facts using numbers different from those used by Wal-Mart. The obligations set forth by a court's local rules are not mere formalities. *See Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required. *Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652, 655 (7th Cir. 2011); *Stoltey v. Brown*, 283 Fed. Appx. 402, 405 (7th Cir. 2008); *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Accordingly, Zuppardi's argument provides no basis for reversal.

**B. The District Court Correctly Awarded Summary Judgment to Wal-Mart**

Zuppardi maintains that the district court erred in granting Wal-Mart's motion for summary judgment. "We review a district court's grant of summary judgment de novo." *Herzog*,

742 F.3d 802, 805 (7th Cir. 2014) (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 364 (7th Cir. 2009)). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012). All facts are construed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842, 847 (7th Cir. 2013).

Illinois law governs the extent of Wal-Mart's liability in this diversity action. In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 305 Ill. Dec. 897, 856 N.E.2d 1048, 1057–58 (2006); *Thompson v. Economy Super Marts, Inc.*, 221 Ill. App.3d 263, 163 Ill. Dec. 731, 581 N.E.2d 885, 888 (1991); *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (applying Illinois law); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001) (same). The parties do not dispute that Wal-Mart owed Zuppardi a duty to maintain its premises in a safe condition; rather, the issue in the instant case is whether Zuppardi can establish that Wal-Mart breached its duty. Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance. *See Newson-Bogan v. Wendy's Old Fashioned Hamburg-*

*ers of New York, Inc.*, 2011 IL App (1st) 092860, 352 Ill. Dec. 188, 953 N.E.2d 427, 431 (2011); *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App.3d 1060, 257 Ill. Dec. 381, 753 N.E.2d 1007, 1010 (2001).

### 1. No Evidence of Placement

Zuppardi argues that she presented sufficient circumstantial evidence that Wal-Mart caused the spill, thereby making Wal-Mart's notice of the condition irrelevant. *See Varner v. Johnson*, 40 Fed. Appx. 997, 1000 (7th Cir. 2002) (landowner is liable for slip and fall injuries "[i]f the plaintiff is injured by slipping on a foreign substance placed or left on the premises by the proprietor or its agent, … whether [the landowner] knows of the dangerous conditions or not.") (quoting *Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999)). In order to create a triable issue of fact with respect to placement of the substance by Wal-Mart, Zuppardi needed to present some evidence showing that the substance was more likely placed on the premises through Wal-Mart's negligence rather than a customer's. *See Donoho v. O'Connell's, Inc.*, 13 Ill.2d 113, 148 N.E.2d 434, 441 (1958); *Gonzales v. Bedolla Enters., Inc.*, 2012 IL App (1st) 120822-U, 2012 WL 6965098, at *8. To prove that the defendant business, as opposed to a third person, created the dangerous condition, Illinois courts have required the plaintiff to (1) show that the foreign substance was related to the defendant's business and (2) "offer[] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises …"*Donoho*, 148 N.E.2d at 439; *see also Lane*, 184 F.3d at 707.

In this case, Zuppardi fails to present evidence of the second element. Zuppardi thought the puddle she slipped on was water because it was clear and odorless, and while it is undisputed that Wal-Mart sells water bottles and other related products, Zuppardi is unable to offer any further evidence tending to show that it was more likely that Wal-Mart was responsible for spilling it on the ground. Zuppardi argues that the evidence showed that any Wal-Mart employee wishing to restock water would need to cross over the location of the puddle and, at the time of her fall, an employee was engaged in restocking shelves a few aisles away in what may have been the soda and water aisle. She uses this proposition to conclude that the spill was more likely caused by Wal-Mart than a customer. The district court was right to reject this contention as based purely on speculation. *See Roger Whitmore's Auto. Services, Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 669 (7th Cir. 2005) (to defeat summary judgment, plaintiff must present something beyond "bare speculation or a scintilla of evidence").

Zuppardi does not come close to setting forth sufficient evidence, either direct or circumstantial, to create an inference that Wal-Mart caused the spill. She did not see the water prior to the fall nor did she know how the water accumulated. There were no trails, tracks, or footprints leading to or from the puddle to any store display or freezer. Zuppardi stated she did not see any Wal-Mart employees as she traveled down the aisle prior to the fall. There was no evidence that a water bottle was found near the location of the spill. She did not notice any carts with paper towels or cleaning liquids near the puddle. While she testified that a Wal-Mart employee may have been restocking water at the time of the fall, water bottles were located six

aisles away from the location where the puddle accumulated. Zuppardi's argument boils down to only that it was possible that a Wal-Mart employee could have spilled the water in the manner she suggests. But it is insufficient for Zuppardi to solely provide a possible way in which a Wal-Mart employee could have caused the spill; she cannot merely "identif[y] a potential source" of the spill to avoid summary judgment. *See Ciciora v. CCAA, Inc.*, 581 F.3d 480, 483 (7th Cir. 2009). Zuppardi has simply offered evidence that she slipped on something that happens to be sold by Wal-Mart, and such evidence fails to support an inference that Wal-Mart caused the spill. *See Olinger v. Great Atl. & Pac. Tea Co.*, 21 Ill.2d 469, 173 N.E.2d 443, 446 (1961) ("even where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, … such evidence [is] insufficient to support the necessary inference").

### 2. No Evidence of Actual or Constructive Knowledge

"Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that the business had actual or constructive notice of the dangerous condition that caused the fall." *Reid*, 545 F.3d at 481 (citing *Pavlik*, 753 N.E.2d at 1010). While Zuppardi concedes that there is no evidence that Wal-Mart had actual notice of the puddle, she argues that she presented evidence from which a trier of fact could determine that Wal-Mart had constructive knowledge of the spill. Constructive notice can be established under Illinois law by either present-ing evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discov-

ered by the exercise of ordinary care, or (2) the dangerous
condition was part of a pattern of conduct or a recurring
incident. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th
Cir. 1988) (citing Illinois cases).[1]

Where constructive knowledge is claimed, "[o]f critical
importance is whether the substance that caused the accident
was there a length of time so that in the exercise of ordinary
care its presence should have been discovered." *Torrez v. TGI
Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007) (quoting *Tomczak
v. Planetsphere, Inc.*, 315 Ill. App.3d 1033, 249 Ill. Dec. 58, 735
N.E.2d 662, 668 (2000) (quotations and alterations omitted));
*Thompson*, 581 N.E.2d at 888 (noting that in establishing
constructive notice, the time element is the material factor).
"Absent any evidence demonstrating the length of time that
the substance was on the floor, a plaintiff cannot establish
constructive notice." *Reid*, 545 F.3d at 482 (citing *Tomczak*, 735
N.E.2d at 668; *Hayes v. Bailey*, 80 Ill. App.3d 1027, 36 Ill. Dec.
124, 400 N.E.2d 544, 546–47 (1980)).

Here, Zuppardi fails to meet her burden of demonstrating
Wal-Mart's constructive notice of the puddle because she
presents next to no evidence of how much time elapsed
between the spill and the fall. Zuppardi testified that she did
not see anyone in the area prior to the fall despite having
walked straight to the back of the store down a large aisle. She
therefore concludes that any spill must have occurred prior to
her retrieving a shopping cart and beginning the walk down

---

[1] On appeal, Zuppardi does not argue that the "pattern of conduct" theory
applies, so we do not consider it. We note, however, that the district court
addressed the issue and rejected Zuppardi's arguments.

the "action alley." Unfortunately for Zuppardi, this testimony establishes only that the spill had occurred at least a few minutes before the accident, and there is no basis in the record for estimating how much earlier the spill might have taken place. In fact, all evidence in this case leads to the conclusion that the puddle was present for a very short period of time. Zuppardi testified that she did not know where the water came from. Despite the puddle being located at the end of an "action alley" heavily trafficked by both customers and employees, there were no track marks or footprints around the puddle. The puddle was located near doors that lead to the back area of the store that were frequently utilized by employees. Yet there is no evidence that any other customer or Wal-Mart employee had discovered or walked through the puddle. We are therefore unable to say with any certainty how long the puddle may have been present before detection. Without more, Zuppardi's contention that the puddle accumulated a few minutes prior to the fall will be treated as the outside limit of time. *See Peterson*, 241 F.3d at 604.

Zuppardi has presented no circumstances in this case that would allow a reasonable person to conclude that a few minutes was enough time to give Wal-Mart constructive notice of the puddle. Although there is no bright-line rule designating the requisite time to establish constructive notice, "periods in excess of ten minutes have failed the test." *Reid*, 545 F.3d at 482 (citing *Hayes*, 400 N.E.2d at 546–47); *see also Hresil v. Sears, Roebuck & Co.*, 82 Ill. App.3d 1000, 38 Ill. Dec. 447, 403 N.E.2d 678, 680 (1980). Here, Zuppardi testified that there were no other customers in the area where the fall took place. Further, there were no adult witnesses to the incident. Although the

"action alleys" are generally high traffic areas of the store, the record before us reflects that Wal-Mart was not experiencing heavy customer traffic at the pertinent time, which lessened the likelihood of a hazardous condition. *See Hresil*, 403 N.E.2d at 680. Had customer traffic been heavy, the burden would have been on Wal-Mart "to provide frequent and careful patrolling." *Reid*, 545 F.3d at 483; *Peterson*, 241 F.3d 604–05. Because the record reflects that the store was not particularly busy, the duty to scrutinize the aisles consequently decreased. Additionally, Wal-Mart's internal policies and procedures for monitoring for spills and other hazardous conditions appropriately addressed the threat of these issues by requiring Wal-Mart employees to monitor the "action alleys," to be on the lookout for unsafe conditions, and to stay with any found spill until removed. Considering these circumstances cumulatively, a few minutes was not enough time to give Wal-Mart constructive notice of the puddle.

Zuppardi makes much of the fact that, pursuant to Wal-Mart internal policies and procedures, employees need to monitor the "action alleys" of the store continuously during times of increased customer traffic. She interprets this store-specific policy to create a legal standard of ordinary care requiring such continuous monitoring. Zuppardi argues that had Wal-Mart been abiding by its own policies, it would have come upon the puddle; and because Wal-Mart did not encounter the puddle before the fall, we can presume that they were not following their own procedures and should be deemed to have constructive knowledge of the spill. As discussed above, there is no evidence that the store was experiencing heavy customer traffic at the time of the fall. But more importantly,

Zuppardi's argument would therefore require the continuous monitoring and patrolling of a store's safety conditions that we and Illinois courts have summarily rejected. *See Peterson*, 241 F.3d at 604 ("the duty of inspection and clean up does not require continuous patrolling of the aisles"); *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998) (a business "is not required to patrol the aisles continuously, but only at reasonable intervals"); *Hresil*, 403 N.E.2d at 449 (demanding a store to constantly patrol its aisles is an unfair requirement). Although Wal-Mart's internal policy requires employees to continuously monitor the "action alleys," this goes above and beyond the duties required of businesses by Illinois courts and does not create a new legal standard of ordinary care requiring the same.

Finally, Zuppardi's alternative argument that the dearth of evidence establishing placement or notice of the puddle should be construed against Wal-Mart because Wal-Mart lost the investigation file pertaining to Zuppardi's incident and the jury would have been read a missing evidence jury instruction at trial puts the cart before the horse. There are no jury instructions if there is no trial, and there is no trial unless the plaintiff is able to put forth sufficient evidence at the summary judgment stage to withstand the motion. This Zuppardi has not done. Additionally, as the district court concluded, there is no reason to believe that the investigation file contained any information which would have been useful to Zuppardi's case. Because there were neither customers nor Wal-Mart employees in the area when Zuppardi fell, there is no reason to believe the investigation file contained any witness statements. Nor was there any usable surveillance footage from the cameras in the

store due to their positioning. Accordingly, Zuppardi has offered nothing other than speculation as to the usefulness of the contents of the investigation file. This is not a basis for reversal.

### III. Conclusion

Zuppardi failed to present evidence demonstrating that Wal-Mart was responsible for the puddle on which she slipped or had either actual or constructive notice of the existence of the puddle. Accordingly, Zuppardi's claim fails and the district court's grant of summary judgment is AFFIRMED.