2023 IL App (2d) 220397-U
No. 2-22-0397
Order filed December 13, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| VERA PURCELL and JOHN PATRICK PURCELL, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-L-295 |
| KEMPER SPORTS MANAGEMENT, INC., | ) ) | Honorable Luis A. Berrones, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Summary judgment entered in favor of the defendant in this slip and fall case was proper, where the plaintiff failed to establish a genuine question of material fact that the defendant created the alleged dangerous condition.

¶ 2   The plaintiffs, Vera Purcell and John Patrick Purcell, appeal from the summary judgment entered against them and in favor of the defendant, Kemper Sports Management, Inc., in the circuit court of Lake County. On appeal, the plaintiffs contend that there were questions of material fact that precluded summary judgment. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    On September 8, 2020, the plaintiffs filed an amended complaint against the defendant alleging negligence and loss of consortium.[1]  The complaint alleged that the defendant managed and operated the golf course and clubhouse commonly known as the Deerpath Golf Club, located in Lake Forest.  There was a café/bar located in the clubhouse.  The complaint alleged that, prior to June 2018, renovations were completed such that carpeted flooring in the café/bar and the hallway leading to the bathrooms was replaced with brown porcelain tile.  The complaint also alleged that, on September 27, 2018, the defendant's employees set up and maintained a water dispenser on the counter of the bar by the north end of the bathroom hallway and that the employees knew that water would spill or drip from the dispenser onto the floor.

¶ 5    The complaint further alleged that, on September 27, 2018, a woman's golf event was scheduled to start at 8 a.m..  The defendant's employees knew that the course would be wet with morning dew and had a duty to exercise ordinary care in the operation of the course and clubhouse. On that day, at about 9 a.m. and after golfing four holes, Vera entered the clubhouse from the north door to go to the restroom.  She slipped and fell as she was walking in front of the bar in the café and turning toward the hallway to the bathroom.  Her shoes were wet. The complaint alleged that the defendant failed to supply a safe and suitable ingress to the restroom in that the defendant failed to supply indoor and outdoor floor mats at the door and runners in the café, allowed golfers access to the café when it knew the floor was slippery with wet golf shoes, supplied a floor that was very slippery when wet, and put a water dispenser on the café bar when there was a water fountain near

---

[1]The amended complaint also asserted claims for negligence and loss of consortium against the City of Lake Forest.  However, on November 10, 2020, the City was voluntarily dismissed.

the restrooms. The plaintiffs alleged that, as a direct and proximate result of the aforementioned failures, Vera sustained personal injury and John suffered the loss of consortium of his spouse.

¶ 6 The defendant filed a motion for summary judgment. The defendant argued that there was no evidence of an unnatural accumulation of water on the floor or that the defendant had any notice of such a condition. The defendant also argued that it had no duty to prevent falls attributable to a natural accumulation of water. Further, the defendant asserted that there was no evidence that water droplets or wet shoes proximately caused Vera to fall.

¶ 7 In support of its motion for summary judgment, the defendant relied on multiple discovery depositions. In her discovery deposition, Vera stated that, on the day of the accident, she started golfing at 8 a.m. on the 15th hole. She was placed in a group with two other women, Phyllis Moughamian and Elizabeth Hamilton. The weather was overcast, cool, and there was dew on the fairways. She was wearing soft spike golf shoes. After golfing the 18th hole, she and Moughamian went to the clubhouse to use the restroom. They entered the north door to the clubhouse but took different routes to the bathroom. Vera turned to the right while Moughamian went straight. When asked what caused her to fall, Vera stated that she "slipped on [her] feet" and that she thought "there was some water on the floor." Vera later stated that she slipped on water. She did not see any water on the floor prior to her fall or during the 15 minutes she was on the ground after her fall. She did not recall if her clothes were wet when she was on the ground. She thought there was water on the floor because her husband, John, told her that there was water on the floor. She acknowledged that there was a water dispenser on the bar but she did not know where it was located in relation to where she fell. She did not know what activities of the defendant caused water to be on the floor. She did not know how long the water droplets that her husband saw were on the floor or where the water came from.

¶ 8      In a discovery deposition, Moughamian stated that she took a different route to the ladies' room than Vera. Moughamian said that she walked carefully on the tile floor because it was slippery, "especially with cleats on your shoes." Her foot had slipped on the tile on previous occasions but she had never fallen down. She did not know of any other women that had slipped on the floor. She did not see or hear Vera fall. However, she heard Vera ask for help so she went to her. Moughamian did not see any droplets of water in the area, she was focused on Vera. Vera never stated what caused her to fall and Moughamian had no opinion as to the cause of Vera's fall. Moughamian acknowledged that there was normally a container of water on the bar in the café so that golfers could serve themselves a cup of water. She had seen water on the floor from spills that occurred while patrons were using the water dispenser on the bar. About a month prior to Vera's fall, Moughamian had spilled water while filling her water bottle at the bar. She told Juarez about it and he dried the floor with a towel.

¶ 9      In his discovery deposition, Juarez stated that he did not see Vera fall but he heard her call for help. He saw Vera sitting up on the floor holding her left wrist and arm. She was bleeding and there was blood on the floor. She was about two feet from the corner of the bar, which was about 6 to 8 feet from the water dispenser on the bar. He retrieved a towel and wrapped Vera's wound. Juarez then called 911 and asked another employee to call Vera's husband, John. He stayed with Vera until the paramedics arrived. During that time, Vera did not say why she fell. After the paramedics took Vera away, Juarez did not see any debris or water on the floor, just some droplets of blood. Juarez denied telling John Purcell that Vera slipped on water. Vera's fall was the first reported fall inside the clubhouse that he was aware of. He was not aware of any other falls that occurred after Vera's. Juarez acknowledged that on one occasion he had cleaned up water on the floor near the water dispenser on the bar because someone had spilled a water bottle.

¶ 10    Elizabeth Hamilton stated in a discovery deposition that she entered the clubhouse when she heard that Vera had fallen. She had no difficulty walking to where Vera was on the floor. She did not recall Vera or anyone else talking about what caused Vera to fall. She was with Vera for about 10 minutes before the paramedics took her away and, during that time, she did not observe any water on the floor within a 10-foot radius of where Vera fell.

¶ 11    John Purcell testified that the floor in the clubhouse café was very slippery when wet. He slipped once but did not fall down. When he arrived at the café on the day of Vera's fall, he saw droplets of water on the floor near Vera. He said there was a trail of water droplets from the water dispenser on the bar to where Vera had fallen on the floor. The droplets were randomly located, not in a straight line. He did not know how the water got there. It could have been from the water dispenser or from some other source. He never observed water dripping from the spigot of the water dispenser on the bar. He also did not know how long the water had been there. When he arrived, Juarez told him that Vera slipped on some water and it was the worst accident he ever saw. The paramedics gave Vera's shoes to John to bring home. John observed that the shoes were wet and there were grass clippings all around the spikes of both shoes. He could not rule out that Vera slipped due to her wet golf shoes.

¶ 12    The plaintiffs retained an expert in architecture, Anthony Fenton, to determine if the wet café floor caused Vera to fall and if those responsible for the maintenance of the floor created or allowed a dangerous condition to remain on the café floor. In a deposition, Fenton opined that the defendant created a dangerous condition by failing to keep the café floor clean and dry, failing to use mats or provide slip resistant walking surfaces, and failing to barricade wet areas on the floor. Fenton's opinions were based on the fact that Vera's fall was consistent with that of a slip on a wet surface.

¶ 13    In response to the defendant's motion for summary judgment, the plaintiffs asserted that they were *not* pleading a premises liability case based upon a natural or unnatural accumulation of water.  Rather, they were pleading an "active negligence" case.  The plaintiffs asserted that the defendant had a duty to maintain the clubhouse floor in a clean and dry condition.  The plaintiffs noted that Fenton testified that the wet porcelain tile floor was a slipping hazard and John testified that he saw water droplets on the floor where Vera fell and that Juarez told him Vera slipped on water.  The plaintiffs argued that this evidence was sufficient to create a question of fact as to whether the defendant breached its duty and whether that breach was the proximate cause of Vera's injuries.  The plaintiffs also asserted that the defendant created the dangerous condition when it chose not to provide runners or floor mats and, therefore, they did not need to prove actual or constructive notice.

¶ 14    On April 14, 2022, following a hearing, the trial court granted the defendant's motion for summary judgment.  The trial court found that the dangerous condition was that the floor was slippery when wet.  The trial court also found that there was no evidence that the defendant created the dangerous condition because it had no input on the choice of flooring.  Failing to put down mats did not create the dangerous condition.  The trial court concluded that there was not sufficient evidence to support a case based on negligence.  Following the denial of their motion to reconsider, the plaintiffs filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, the plaintiffs argue that the trial court erred in granting summary judgment in favor of the defendant.  Summary judgment is proper where the pleadings, depositions, and admissions on file, together with the affidavits, if any, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c)

(West 2022). The trial court must construe the evidentiary materials strictly against the movant and liberally in favor of the nonmovant. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Although a drastic means of disposing of litigation, summary judgment is an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009). We review *de novo* an order granting summary judgment. *Espinoza*, 165 Ill. 2d at 113.

¶ 17    At oral argument in this case, the plaintiffs abandoned any argument that Vera slipped due to tracked-in water on her golf shoes, that this was a premises liability case, or that the claim was based on actual or constructive notice of the alleged dangerous condition. The plaintiffs now assert only that Vera slipped due to water on the floor near the café bar where the accident occurred and that the defendant was negligent because it created the dangerous condition.

¶ 18    A plaintiff bringing a negligence claim must prove that the defendant owed her a duty of care, the defendant breached that duty, and the breach was the proximate cause of her injury. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 236 (2010). Summary judgment is proper for the defendant if the plaintiff fails to establish any of those elements. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001). In determining whether a duty exists, our courts consider four factors: 1) foreseeability of the injury; 2) likelihood of the injury; 3) the magnitude of the burden on the defendant in guarding against the injury and 4) the consequences of placing that burden on a defendant. *LaFever v. Kemlite Co., a Division of Dyrotech Industries, Inc.*, 185 Ill. 2d 380, 389. The existence of a duty is a question of law for the court to decide. *Espinoza*, 165 Ill. 2d at 114. A plaintiff is not required to prove her case in response to a motion for summary judgment but must present evidentiary facts to support the elements of the cause of action. *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 885 (2009). It is well settled that

"[l]iability cannot be based on guess, speculation, or conjecture as to the cause of the injury." *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860, ¶ 16.

¶ 19    The parties do not dispute that the defendant owed the plaintiff a duty to exercise ordinary care in the operation of the clubhouse. To the extent the plaintiffs argue that the duty was to keep the floor dry at all times and the defendant breached that duty because there was water on floor, we are not aware of any precedent to support such an assertion. To the contrary, it is well settled that a business owner is not the insurer of his customer's safety. *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill. 2d 469, 476 (1961). Moreover, property owners generally owe a duty only to take reasonable measures to keep premises safe for invitees and need not take unduly burdensome or impractical measures. See, *e.g.*, *Krywin v. Chicago Transit Authority*, 283 Ill. 2d 215, 232-33 (explaining that natural accumulation rule was based not on a notion that accumulated water was safe to walk on, but on the impracticality of constantly removing it: "the hazards presented have always been acknowledged, but the imposition of an obligation to remedy those conditions would be so unreasonable and impractical as to negate the imposition of a legal duty to do so." (quoting *Trevino v. Flash Cab Co.*, 272 Ill. App. 3d 1022, 1029-30 (1995)). Thus, the issue is whether the plaintiffs have established a genuine question of material fact as to whether the defendant breached a more limited duty: to keep the floors reasonably safe for the plaintiffs.

¶ 20    The plaintiffs argue that the defendant breached its duty because it created the alleged dangerous condition by placing a water dispenser on the café bar that was known to produce spills. This argument has no merit. The only person who saw water on the floor was Vera's husband John. However, he only saw the water on the floor after Vera fell. Further, he admitted in his discovery deposition that he did not know how the water got there and he did not see water dripping

from the water dispenser on the café bar. He stated that the water could have been from the water dispenser or it could have been from some other source. John's deposition testimony fails to raise a genuine question of material fact because, even if there was water on the floor, there was no testimony or evidence to establish that it was there due to the actions of the defendant or one of its employees. As such, any assertion that the alleged water on the floor was caused by the defendant is mere speculation, which is insufficient to overcome summary judgment.[2] *Newsom-Bogan*, 2011 IL App (1st) 092860, ¶ 16; see also *Olinger*, 21 Ill. 2d at 475 (even where there is proof that a foreign substance on the floor was related to defendant's business, a defendant is entitled to a directed verdict where there is no evidence offered other than the presence of a substance on the floor and the occurrence of the injury).

¶ 21    In arguing that the defendant created the dangerous condition, the plaintiffs cite *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113 (1958), *Bailey v. Graham Enterprises, Inc.*, 2019 IL App (1st) 181316, and *Sommese v. Maling Bros.*, 65 Ill. App. 3d 223 (1965), *reversed on other grounds*, 36 Ill. 2d 263 (1966). These cases do not support the plaintiffs' argument.

¶ 22    In *Donoho*, the plaintiff slipped on an onion ring and the evidence showed that about 15 minutes before she fell, the "table had been cleared by the bus boy, who had a practice of clearing the tables by putting the dirty dishes on a tray, which he would set on a chair while he wiped the debris off the counter with a damp cloth, so that particles could drop to the floor; and that no one else had since been at the counter, or in the particular area." *Donoho*, 13 Ill. 2d at 124. The

---

[2]Although Moughamian testified that she had, on one occasion, spilled water on the floor while using the water dispenser, that is not relevant here as the plaintiffs have disavowed that this case was based on notice or premises liability.

reviewing court held that this was sufficient circumstantial evidence to suggest that the onion ring was on the floor through the act of defendant's employee and that the issue of negligence was properly submitted to the jury. *Id.* at 125. Here, unlike *Donoho*, there was no evidence that any of the defendant's employees were responsible for the alleged water drops on the floor.

¶ 23 In *Bailey*, the plaintiff slipped and fell on a handicapped parking symbol painted on the surface of a parking lot which was covered by slush. *Bailey*, 2019 IL App (1st) 181316, ¶ 6. There was evidence that the paint used to make the handicap symbol was excessively slippery when wet and thus required a slip resistant coating. An expert witness stated in an affidavit that the slip resistant additive would need to be reapplied on the symbol every 90 days due to normal wear and tear from foot and motor traffic. *Id.* ¶ 32. The reviewing court concluded that summary judgment was improper because there was a question of fact as to whether the defendant repainted the handicap symbol and refreshed the slip resistant coating in a way to make the surface reasonably safe for customers (*id.* ¶ 25), or whether it failed to properly "maintain" the symbol, making it unreasonably slippery when wet (*id.* ¶ 33). Here, unlike in *Bailey*, there was no evidence that the defendant took any active steps, or failed to act in any manner, that resulted in water on the floor or that decreased the slip resistance of the floor.

¶ 24 In *Sommese*, the plaintiff fell in the entryway of the defendant's store. It had been raining periodically before the plaintiff's fall and there was evidence that the entryway was wet. The entryway floor was terrazzo tile. The plaintiff provided an expert witness who testified that the terrazzo floor, upon becoming wet, was very slippery and hazardous without an abrasive material on it. *Sommese*, 65 Ill. App. 2d at 228. The jury returned a verdict in favor of the plaintiff, and the defendant appealed, arguing that the trial court should have directed a verdict for the defendant. The reviewing court disagreed, holding that, under the circumstances, whether the defendant was

negligent in failing to place rubber mats or mop the floor, was a question for the jury. *Id.* at 237. In affirming the appellate court on this issue, our supreme court stated that "[i]t is this feature of the condition of an outside terrazo [*sic*] floor [that, without an abrasive, it became very slippery and dangerous when wet,] which distinguishes this case from those cases in which recovery has been denied as a result of slipping and falling on a wet floor." *Sommese*, 36 Ill. 2d at 266.

¶ 25 The plaintiffs' reliance on *Sommese* is misplaced. The issue in *Sommese* related to "the law that liability may be imposed on the landlord if a walking surface becomes unreasonably dangerous because of the nature of its construction or the materials used to construct it." *Richter v. Burton Investment Properties, Inc.*, 240 Ill. App. 3d 998, 1003 (1993) (citing *Selby v. Danville Pepsi-Cola Bottling Co.*, 169 Ill. App. 3d 427, 436 (1988)). In this case, the plaintiffs are not claiming that the installation of the floor was negligent or that some other flooring should have been installed.

¶ 26 This case is more similar to *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014). While *Zuppardi* is a premises liability case, it is instructive to the extent that it addresses whether the *Zuppardi* defendant created a dangerous condition. In *Zuppardi*, plaintiff slipped on a puddle of water in an aisle at Wal-Mart. *Id.* at 646. The Seventh Circuit explained that in order to survive summary judgment and "create a triable issue of fact with respect to placement of the substance by Wal-Mart, [plaintiff] needed to present some evidence showing that the substance was more likely placed on the premises through Wal-Mart's negligence rather than a customer's." *Id.* at 649. Even though plaintiff believed she slipped on water, and it was undisputed that Wal-Mart sold water bottles, she did not offer any other evidence "tending to show that it was more likely that Wal-Mart was responsible for spilling it on the ground." *Id.* at 650. In the present case, similar to the plaintiff in *Zuppardi*, Vera did not see any water on the floor before or after her fall.

The only one who allegedly saw the water, John Purcell, did not know where the water came from. Assuming there was water on the floor, there is no evidence to suggest that it was due to the defendant's negligence rather than the negligence of a patron in the clubhouse. As such, the trial court did not err in granting summary judgment in favor of the defendant.

¶ 27                                    III. CONCLUSION

¶ 28     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 29     Affirmed.